No. 14-3774

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

CARMEN FRANKLIN, *et al.*,

*Plaintiffs-Appellants,*

*v.*

PARKING REVENUE RECOVERY SERVICES, INC., *et al.*,

*Defendants-Appellees*

On Appeal from an Order of The United States District Court
For the Northern District of Illinois
Hon. Edmond E. Chang
Case No. 13-02578

**BRIEF OF AMICI CURIAE
FEDERAL TRADE COMMISSION and
CONSUMER FINANCIAL PROTECTION BUREAU**

TO-QUYEN TRUONG
  *Deputy General Counsel*

JOHN R. COLEMAN
  *Assistant General Counsel*

NANDAN M. JOSHI
THOMAS M. MCCRAY-WORRALL
  *Counsel*
Consumer Financial Protection
Bureau
Washington, D.C. 20552

JONATHAN E. NUECHTERLEIN
  *General Counsel*

JOEL MARCUS
  *Director of Litigation*

LESLIE RICE MELMAN
  *Assistant General Counsel*
Federal Trade Commission
600 Pennsylvania Ave. NW
Washington, DC 20580

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................ii

INTEREST OF AMICI CURIAE ...............................................1

QUESTION PRESENTED...........................................................2

STATEMENT OF THE CASE ...................................................2

    A.   Statutory Background.....................................................2

    B.   Facts and Procedural History ......................................4

ARGUMENT.................................................................................7

CONCLUSION ..........................................................................17

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**                                                                **Pages**

*A.E.I. Music Network, Inc. v. Bus. Computers, Inc.*, 290 F.3d 952 (7th Cir. 2002) ............................................................................................8

*Accord Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000) .....................................................................................................9

*Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720 (7th Cir. 2010) .....................................................................................................8

*Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322 (7th Cir. 1997) ......................................................................6, 7, 10, 15

*Beauvior v. Israel*, 2014 U.S. Dist. LEXIS 109047 (E.D.N.Y. 2014) ......12

*Berman v. GC Servs. Ltd. P'shp*, 146 F.3d 482 (7th Cir. 1998) ..............15

*Betts v. Equifax Credit Info. Servs.*, 245 F. Supp. 2d 1130 (W.D. Wash. 2003) ...................................................................................................13

*Bridge v. Ocwen Fed. Bank*, 681 F.3d 355 (6th Cir. 2012) .......................1

*Brines v. XTRA Corp.*, 304 F.3d 699 (7th Cir. 2002)................................8

*Coretti v. Lefkowitz*, 965 F. Supp. 3 (D. Conn. 1997) .............................12

*DIRECTV, Inc. v. Cephas*, 294 F. Supp. 2d 760 (M.D.N.C. 2003)..........12

*Durso v. Summer Brook Preserve Homeowners Ass'n*, 641 F. Supp. 2d 1256 (M.D. Fla. 2008) ........................................................................14

*Eades v. Kennedy, P.C. Law Offices*, 799 F.3d 161 (2d Cir. 2015) .........14

*Grimard v. Palmer, Reifler & Assocs.*, P.A., 2007 U.S. Dist. LEXIS 55733 (E.D. Mich. 2007) ....................................................... 12

*Gulley v. Markoff & Krasny*, 664 F.3d 1073 (7th Cir. 2011) ................... 13

*Harper v. Collection Bureau of Walla Walla*, 2007 U.S. Dist. LEXIS 88993 (W.D. Wash. 2007) ................................................... 13

*Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367 (11th Cir. 1998) .... 15

*Jenkins v. Heintz*, 25 F.3d 536 (7th Cir. 1994), *aff'd*, 514 U.S. 291 (1995) ........................................................................... 11

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) ......................................... 16

*Mabe v. G.C. Servs. Ltd. P'shp*, 32 F.3d 86 (4th Cir. 1994) ................... 15

*McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) .......... 1

*Newman v. Boehm, Pearlstein & Brights, Ltd.*, 119 F.3d 477 (7th Cir. 1997) ........................................................................... 14

*Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227 (3rd Cir. 2005) .......... 9

*Rizzo v. Pierce & Assocs.*, 351 F.3d 791 (7th Cir. 2003) ......................... 10

*Shorts v. Palmer*, 155 F.R.D. 172 (S.D. Ohio 1994) ............................... 12

*Shula v. Lawent*, 359 F.3d 489 (7th Cir. 2004) ....................................... 10

*Williams v. Redflex Traffic Sys., Inc.*, 2008 U.S. Dist. LEXIS 22723 (E.D. Tenn. 2008) ................................................................. 13

*Yon v. Alliance One Receivables Mgmt., Inc.*, 2007 U.S. Dist. LEXIS 89492 (S.D. Fla. 2007) .......................................................... 13

## Statutes

12 U.S.C. § 5491(a) ................................................................. 2

15 U.S.C. § 1692(a) ................................................................ 3

15 U.S.C. § 1692(e) ................................................................ 3

15 U.S.C. § 1692a(5) ................................................ 1, 3, 7, 16

15 U.S.C. §§ 1692d-1692f ....................................................... 3

15 U.S.C. § 1692f(1) ............................................................... 3

15 U.S.C. § 1692g(a)(3) ........................................................... 3

15 U.S.C. § 1692k ................................................................... 4

15 U.S.C. § 1692k(a) ............................................................... 4

15 U.S.C. § 1692*l*(b)(6) ........................................................... 2

15 U.S.C. § 1692*l*(d) ............................................................... 2

## Rules

Fed. R. App. P. 29(a) .............................................................. 1

## Legislative Materials

S. Rep. No. 382, 95th Cong., 1st Sess. (reprinted in 1977 U.S. Code
   Cong. & Admin. News 1695) ............................................. 16

## Miscellaneous

*Black's Law Dictionary* (10th ed. 2014) ................................. 13

iv

FTC, *Repairing a Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration*, Commission and Staff Reports (July 2010), https://www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-bureau-consumer-protection-staff-report-repairing-broken-system-protecting/debtcollectionreport.pdf ............................. 1

FTC, *The Structure and Practices of the Debt Buying Industry* (January 2013), http://www.ftc.gov/os/2013/01/debtbuyingreport.pdf ................. 1

Statements of General Policy or Interpretation, Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097 (1988) .... 15

## INTEREST OF AMICI CURIAE

The Federal Trade Commission, an agency of the United States, files this brief under Federal Rule of Appellate Procedure 29(a) and in response to the Court's order of September 11, 2015. We address the question whether a supposed unpaid parking fee is a "debt" within the meaning of the Fair Debt Collection Practices Act (FDCPA or Act), 15 U.S.C. § 1692a(5). We do not address the merits of plaintiffs' claims beyond the threshold definition of "debt."

The FTC has an interest in this case because abusive debt collection practices are a primary focus of the Commission's consumer protection efforts. The Commission has brought many cases enforcing the FDCPA, and published several reports on problems in the debt collection industry.[1] In private FDCPA cases, this Court and others have relied on the Commission's expertise. *See*, *e.g.*, *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014); *Bridge v. Ocwen Fed. Bank*, 681 F.3d 355, 361 (6th Cir. 2012).

---

[1] *See*, *e.g.*, FTC, *The Structure and Practices of the Debt Buying Industry* (January 2013), http://www.ftc.gov/os/2013/01/debtbuyingreport.pdf; FTC, *Repairing a Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration*, Commission and Staff Reports (July 2010), https://www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-bureau-consumer-protection-staff-report-repairing-broken-system-protecting/debtcollectionreport.pdf.

1

The Consumer Financial Protection Bureau joins this brief. The CFPB shares the FTC's interest in protecting consumers from unlawful debt collection practices. Congress has charged the CFPB with responsibility for "regulat[ing] the offering and provision of consumer financial products and services under Federal consumer financial law[]," which includes the FDCPA. 12 U.S.C. § 5491(a). The FDCPA authorizes the CFPB to enforce the FDCPA, 15 U.S.C. § 1692*l*(b)(6), and to "prescribe rules with respect to the collection of debts by debt collectors." 15 U.S.C. § 1692*l*(d).

## QUESTION PRESENTED

In its order of September 11, 2015, the Court asked the FTC to address this question: "Is an unpaid parking-lot fee (here consisting of a $1.50 daily parking fee and a nonpayment penalty of $45) a 'debt' within the meaning of" the FDCPA?

## STATEMENT OF THE CASE

### A.    Statutory Background

Congress enacted the FDCPA in 1977 in light of "abundant evidence of the use of abusive, deceptive, and unfair debt collection

practices by many debt collectors." It intended the statute to "eliminate" such abusive practices. 15 U.S.C. § 1692(a), (e).

The FDCPA generally prohibits "*any*" harassing or abusive conduct, "*any*" deceptive or misleading representation, and *all* "unfair or unconscionable means" of collecting debts. 15 U.S.C. §§ 1692d-1692f (emphases added). The statute lists more than two dozen examples of prohibited abusive, misleading, and unfair debt collection practices. *Id.* Of particular relevance here, the Act prohibits a debt collector from adding any amount to the underlying debt unless such additional amounts are authorized by law or the agreement that created the debt. 15 U.S.C. § 1692f(1). The Act also requires debt collectors to notify consumers that a debt will be presumed valid unless the consumer disputes it. *See* 15 U.S.C. § 1692g(a)(3).

The FDCPA broadly defines a "debt" to mean:

> *Any* obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5) (emphasis added). Thus, the term "debt" encompasses "any" obligation to pay money so long as that obligation

"aris[es] out of a transaction."  Congress did not define the term "transaction."

Section 813 of the Act makes "any debt collector who fails to comply with any provision" of the Act "with respect to *any* person" strictly liable for actual damages.  15 U.S.C. § 1692k(a) (emphasis added).  Nothing in the FDCPA exempts debt collectors from compliance or from liability based on the reasons for a consumer's delinquency or her conduct in avoiding payment.

## B.    Facts and Procedural History

In June 2012, plaintiffs parked their cars in a parking lot owned by Metra, the public commuter railroad, but operated under contract by a private entity, CPS Chicago Parking, LLC (CPS).  Dist. Ct. Op. 2.  The lot offers parking spaces to all comers at the rate of $1.50 per day.

Believing that plaintiffs had not paid the daily fee, CPS issued plaintiffs parking violation notices demanding payment of the $1.50 parking charge and an additional fee of $45.  CPS sent the matter for collection to a debt collector, Parking Revenue Recovery Services, Inc., whose counsel, defendant Byron Bellerud II, P.C., sent plaintiffs dunning letters seeking payment of $46.50.  Dist. Ct. Op. 3-4.

Plaintiffs filed a class action complaint in the Northern District of Illinois, alleging that defendants had violated the FDCPA by (1) making a false representation in the demand letters that, to avoid a presumption of validity, plaintiffs must dispute charges and fees in writing; (2) attempting to collect the additional $45 charge without express authorization to impose that charge; and (3) making false, deceptive, or misleading representations.

Defendants moved for summary judgment, contending that "the $46.50 charged to each Plaintiff for failure to pay the $1.50 parking fee [was] a fine, much like a parking ticket," and not a debt subject to the FDCPA. Dist. Ct. Op. 7. Plaintiffs argued in response that parking in the lot was a "transaction" under the statute – namely, CPS offered a place to park and plaintiffs accepted the offer by parking their cars in CPS's lot. *Id*. As a consequence, they contended, the $45 charge was merely a late fee arising out of the underlying transaction. *Id*.

In the order on review, the court granted defendants' motion for summary judgment. It found that the $46.50 charge was a "fine" and therefore "*not* the byproduct of a consensual transaction." Dist. Ct. Op. 11-12. It necessarily followed, the court reasoned, that the money the

defendants were attempting to collect was not a "debt" within the meaning of the FDCPA.  *Id.*

Specifically, the district court found the $45 charge to more closely resemble a "fine imposed for violation of a rule or law" than "a late fee imposed on a pre-existing" and "consensual" obligation to pay.  Dist. Ct. Op. 9.  According to the district court, no "mutual agreement occurs when [a] parker fails to pay the fee" because "acceptance of the service alone is not sufficient evidence of acceptance of an obligation to pay." Dist. Ct. Op. 11.  The court determined further that even if the plaintiffs had paid the $1.50 daily parking fee, that *still* would not be enough to transform the fine into a debt because the parking violation notice does not "seek[] payment of a contracted-for amount," but "impos[es] a penalty for violating the rules of the lot requiring payment to park."  Dist. Ct. Op. 9-10.

The district court distinguished this Court's holding in *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997), that a bounced check constituted a debt under the FDCPA. The district court reasoned that in *Bass*, the check "evidence[d] the drawer's obligation to pay for the purchases made with the check" and

proved that "the shopper ha[d] voluntarily engaged in a mutual transaction with the shop owner and promised to pay for a particular good or service." Dist. Ct. Op. 10 (citation omitted). By contrast, the district court reasoned, a failure to pay by the user of a parking lot more closely resembles theft, which this Court has found not to amount to a transaction. Dist. Ct. Op. 9 (citing *Bass*, 111 F.3d at 1326).

## ARGUMENT

Using a parking lot that is open to all customers on stated terms results in a "transaction" within the meaning of the FDCPA. Any obligation to pay that "aris[es] out of" that transaction is a "debt" subject to the statutory protections. The Court should reverse the district court's decision to the contrary.

1. The FDCPA broadly defines "debt" to mean "any obligation * * * to pay money arising out of a [consumer] transaction." 15 U.S.C. § 1692a(5). Here, the critical statutory term is "transaction," which Congress left undefined. This Court has held that Congress used "transaction" as "a broad reference to many different types of business dealings between parties." *Bass*, 111 F.3d at 1325. That "ordinary meaning," the Court held, is "clear and unrestricted." *Id*. at 1326. "As

7

long as [a] transaction creates an obligation to pay, a debt is created" under the statute.  *Id.* at 1325.

Parking in a lot that is open to the public for a stated fee is a "transaction."  Entering the lot and occupying a space creates an implied contract:  the lot owner offers to provide a space for a stated fee, and the consumer accepts that offer – and agrees to pay the fee – by parking there.  The action of parking "takes the place of articulate acceptance" of the offer.  *Brines v. XTRA Corp.*, 304 F.3d 699, 703 (7th Cir. 2002).  Such an agreement through action is "a true contract" that "contain[s] all necessary elements of a binding agreement [and] differs from other contracts only in that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties."  *A.E.I. Music Network, Inc. v. Bus. Computers, Inc.*, 290 F.3d 952, 956 (7th Cir. 2002) (quotations omitted).  In short, "the circumstances allow an inference that the parties had a deal."  *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 726 (7th Cir. 2010).

The district court therefore erred when it concluded that "acceptance of the service alone is not sufficient evidence of acceptance of an obligation to pay."  Dist. Ct. Op. 11.  To the contrary, courts have found

acceptance of service evidences a "transaction" under the FDCPA.  For example, a homeowner's use of water and sewer services resulted in a "transaction" even when the user had no formal agreement with the utility.  *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227 (3rd Cir. 2005).  The homeowner's use of municipal services "*in whatever manner*" gave rise to "the kind of *pro tanto* exchange contemplated by the FDCPA."  *Id.* at 233 n.8 (emphasis added).  In other words, usage alone resulted in a "transaction" that gave rise to a "debt."  *Id.  Accord Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 400 (3d Cir. 2000) (homeowner's request for water and sewer services, accompanied by evidence of his consumption, involved a "transaction" giving rise to an "obligation to pay").

For the same reason, a "transaction" under the FDCPA was created when plaintiffs used the parking services offered to the public in exchange for a stated fee.  Parking a car in a lot open to the public is no different from using utility services offered to all homeowners.  Nor is it different from many commercial dealings in which people engage daily, such as visiting a doctor, ordering groceries, or calling a pharmacy to request delivery of prescription refills.  In each such case, using the

offered service by itself results in a transaction that creates an obligation to pay.

Because the act of parking constitutes a transaction under the FDCPA, both the $1.50 fee and the $45 penalty for failure to pay the fee "aris[es] out of" the transaction and are debts under the statute. *See*, *e.g.*, *Shula v. Lawent*, 359 F.3d 489, 491 (7th Cir. 2004) (court costs arising out of debt collection suit are incidental to the debt because "had it not been for the suit * * * no claim for costs would have arisen"). The extra amount added for non-payment of the initial debt is akin to an authorized late-fee that may be imposed on an untimely payment of a debt. *See Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 793 (7th Cir. 2003).

2. The district court's restrictive reading of "transaction" conflicts with this Court's instruction that the term be read broadly in keeping with its "ordinary meaning." *Bass*, 111 F.3d at 1326. The district court stated that the question here is "whether the fee stems from an underlying consensual transaction creating an obligation to pay." Dist. Ct. Op. 8-9. But the court then found that "[a]cceptance of the [parking] service alone is not sufficient evidence of acceptance of [that] obligation to pay." Dist. Ct. Op. 11. That was error for the reasons set forth

above.  The district court also suggested that no transaction occurred because Metra would not have consented "to a person leaving his car in the lot without paying."  Dist. Ct. Op. 11 & n.5.  Whether a transaction occurred, however, cannot turn on what Metra would have done had it known that a particular consumer would not pay.  Under that standard, no transaction would ever occur under the FDCPA because no service provider would ever agree to provide services to a consumer who the service provider knew would not pay for them.  Given this Court's broad reading of "transaction," the district court could not "disregard plain statutory language" in favor of a more restrictive reading that it views as "more reasonable."  *Jenkins v. Heintz*, 25 F.3d 536, 539 (7th Cir. 1994), *aff'd*, 514 U.S. 291 (1995).

The district court compounded this error by assuming that plaintiffs had not paid the parking fee and equating them with thieves.  Even if the record had shown that plaintiffs did not pay, the parking fee would still be a debt arising from a transaction.  This case differs from that of a thief and his victim who have *no* mutual agreement.[2]  In that

---

[2] By contrast, a grocery store shopper does not accept an offer by placing the items he likes in his cart.  The entire transaction – offer and

11

situation, the thief's eventual obligation to pay for stolen goods arises from criminal and tort law, not from a "meeting of the minds" of the parties to a mutual business agreement. *See Grimard v. Palmer, Reifler & Assocs.*, P.A., 2007 U.S. Dist. LEXIS 55733 (E.D. Mich. 2007) (obligation arising from settlement of shoplifting allegations not a "debt" under the FDCPA); *Shorts v. Palmer*, 155 F.R.D. 172, 176 (S.D. Ohio 1994) (shoplifter "never had a contractual arrangement of any kind with * * * the defendants"). In the absence of a mutual agreement, courts have held that theft does not give rise to a "debt" under the FDCPA. *See*, *e.g.*, *Beauvior v. Israel*, 2014 U.S. Dist. LEXIS 109047 (E.D.N.Y. 2014) (stealing natural gas through meter tampering); *DIRECTV, Inc. v. Cephas*, 294 F. Supp. 2d 760, 764 (M.D.N.C. 2003) (stealing satellite TV service); *Coretti v. Lefkowitz*, 965 F. Supp. 3 (D. Conn. 1997) (using illegal coding device to steal premium cable service).

In this case, by contrast, CPS offered parking services at the stated rate to all comers, and plaintiffs accepted that offer by parking their cars in the lot. As set forth above, these circumstances demonstrate a mutual agreement to engage in a transaction.

---

acceptance – does not occur until the merchant accepts his payment at the register.

3.  The district court also misapplied judicial precedent and FTC staff guidance in describing the money allegedly owed by plaintiffs here as a "fine" instead of a debt.  Dist. Ct. Op. 8, 12, 15.  A "fine" generally refers to a pecuniary criminal punishment or civil penalty payable to the public treasury.  *Black's Law Dictionary* 749 (10th ed. 2014).  A fine typically does not arise from a mutual agreement between the parties – *i.e.*, a "transaction" – or an express or implied-in-fact contract for goods and services.  For example, the case principally relied on by appellees (Br. 23), *Gulley v. Markoff & Krasny*, 664 F.3d 1073 (7th Cir. 2011) (per curiam), involved fines levied on a property owner for failure to comply with municipal codes.  The Court held that the fines were not debts because they did not "aris[e] from consensual consumer transactions." *Id.* at 1075.[3]

Some cases have acknowledged that a "fine" can encompass private penalties in the limited circumstance of a community whose

---

[3] *See also Williams v. Redflex Traffic Sys., Inc.*, 2008 U.S. Dist. LEXIS 22723 (E.D. Tenn. 2008), *aff'd on other grounds*, 582 F.3d 617 (6th Cir. 2009) (unpaid traffic tickets); *Harper v. Collection Bureau of Walla Walla*, 2007 U.S. Dist. LEXIS 88993 (W.D. Wash. 2007) (fine for driving with suspended license); *Yon v. Alliance One Receivables Mgmt., Inc.*, 2007 U.S. Dist. LEXIS 89492 (S.D. Fla. 2007) (traffic ticket); *Betts v. Equifax Credit Info. Servs.*, 245 F. Supp. 2d 1130, 1133 (W.D. Wash. 2003) (fee for impoundment imposed by state statute).

members have agreed to be bound by a set of rules. *See*, *e.g.*, *Durso v.*
*Summer Brook Preserve Homeowners Ass'n*, 641 F. Supp. 2d 1256, 1265
(M.D. Fla. 2008) (fines for parking boat and trailer in violation of
subdivision rules). But even in those situations, courts have carefully
distinguished "fines" for actions that violate pre-existing covenants from
"debts" arising out of a transaction. Compare *id*. at 1264-65 with
*Newman v. Boehm, Pearlstein & Brights, Ltd.*, 119 F.3d 477, 481 (7th
Cir. 1997) (past due homeowners' assessments were "debts" under the
FDCPA because "the obligation to pay in these circumstances arose in
connection with the purchase of the homes themselves").

Appellees cannot escape the requirements of the FDCPA by
characterizing the "debts" they seek to collect as "fines." At bottom,
they seek fees arising from a consumer transaction in which services
were exchanged for plaintiffs' implicit promise to pay. Plaintiffs'
dealings with CPS are precisely "that type of *pro tanto* exchange which
the statutory definition [of debt] envisages." *Eades v. Kennedy, P.C.*
*Law Offices*, 799 F.3d 161, 170 (2d Cir. 2015) (citations omitted).

For these reasons, appellees get no help from the FTC's 1988 Staff
Commentary opining that "fines" are not "debts" under the FDCPA. *See*

14

Statements of General Policy or Interpretation, Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50102 (1988) (cited at Brief for Appellees at 23). None of the monetary obligations discussed in that Commentary – fines, alimony, taxes, and tort claims – are tied to quid-pro-quo exchanges of money for service. They therefore do not arise from a "transaction." *See*, *e.g.*, *Mabe v. G.C. Servs. Ltd. P'shp*, 32 F.3d 86 (4th Cir. 1994) (child support obligation arising from administrative order); *Berman v. GC Servs. Ltd. P'shp*, 146 F.3d 482 (7th Cir. 1998) (past due unemployment insurance contributions); *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367 (11th Cir. 1998) (alleged obligation for damages arising from accident).

4. As this Court has acknowledged, the definition of "debt" "serves to limit the scope of the FDCPA." *Bass*, 111 F.3d at 1324. Thus the narrowed reading of that term adopted by the district court may leave unprotected any number of mutual agreements that are not formally documented. For example, a patient who receives medical treatment without an express agreement to pay is entitled to protection from abusive debt collection practices as much as the patient who signs a contract up front.

Congress did not intend the statute to apply narrowly. To ensure comprehensive coverage, it used the broad term "transaction" to refer to the entire range of mutual dealings. Congress also extended the coverage of the statute to "[a]*ny* obligation or alleged obligation of a consumer to pay money *arising out of* a transaction." 15 U.S.C. § 1692a(5) (emphasis added). The district court's decision undermines that inclusive intent.

Indeed, when it enacted the FDCPA, Congress specifically rejected a rationale relied on by the district court. As this Court has noted, "the FDCPA's legislative history reflects that Congress acknowledged there may be a 'number of persons who *willfully* refuse to pay just debts,' * * * but apparently 'believe[d] that the serious and widespread abuses' of debt collectors outweighed the necessity to carve out an exception for these so-called 'deadbeats.'" *Keele v. Wexler*, 149 F.3d 589, 596 (7th Cir. 1998) (quoting S. Rep. No. 382, 95th Cong., 1st Sess. 3 (reprinted in 1977 U.S. Code Cong. & Admin. News 1695, 1697)) (emphasis and alteration in original). But by the district court's logic, a consumer's mere failure to pay an obligation arising out of a transaction erases the transaction itself and leaves the consumer without any protection from

16

any subsequent unlawful debt collection practices. That result contravenes Congress's policy determination that a debt under the FDCPA comes about when the underlying obligation to pay arose out of a transaction. When that test is satisfied, as it is here, Congress intended the consumer to be protected even if she fails to meet her obligation to pay.

## CONCLUSION

The decision of the district court should be reversed.

Respectfully submitted,

TO-QUYEN TRUONG
*Deputy General Counsel*

JONATHAN E. NUECHTERLEIN
*General Counsel*

JOHN R. COLEMAN
*Assistant General Counsel*

JOEL MARCUS
*Director of Litigation*

NANDAN M. JOSHI
THOMAS M. MCCRAY-WORRALL
*Counsel*

/s/ Leslie Rice Melman
LESLIE RICE MELMAN
*Assistant General Counsel for Litigation*

Consumer Financial Protection
Bureau
1700 G Street, N.W.
Washington, D.C. 20552

Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580
(202) 326-2478
(202) 326-2477 (fax)
lmelman@ftc.gov

December 11, 2015

CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2015, I filed the foregoing

with the Court's appellate CM-ECF system, and that I caused the

foregoing to be served through the CM-ECF system on all other parties

in this case, who are registered ECF users.


/s/ Leslie Rice Melman
LESLIE RICE MELMAN